IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JANE C. ORIE,                              )
      Petitioner,                        )
                                )
           v.                               )      2:15-cv-1153
                                )
STEPHEN A. ZAPPALA, Jr., et al.,           )
      Respondents.                       )

MEMORANDUM and ORDER

Mitchell, M.J.:

      Jane C. Orie by her counsel has presented a petition for a writ of habeas corpus. For the reasons set forth below the petition will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

      Orie is presently on parole following her conviction by a jury of theft of services and related offenses at CC201010285 in the Court of Common Pleas of Allegheny County. She was sentenced to a thirty to one hundred-twenty months incarceration. After serving "nearly two years in state prison she will be on state parole until approximately June of 2022."[1] This sentence was imposed on June 4, 2012.

      An appeal was taken to the Superior Court in which the issues presented were:

      A.  Whether the retrial should have been barred on state and federal double jeopardy grounds because the trial court lacked the "manifest necessity" to declare a mistrial while the jury was deliberating in the first trial?

      B.  Whether the trial court erred in precluding the testimony of the longtime Senate Republican Chief Counsel, Steve MacNett, who would have testified at the second trial as he did at the first that Senate policy permitted campaigning during the legislative day with the use of comp time which testimony was needed to rebut that of the prosecution witness, Russ Faber, Senate Chief Clerk, who testified to the contrary?

---

[1] See: Petition at p.1. Thus, she is "in custody" for purposes of 28 U.S.C. § 2254. Jones v. Cunningham, 371 U.S. 236 (1963); , 371 U.S. 236 (1963); Leyva v. Williams, 504 F.3d 357, 363 (3d Cir. 2007).

C.  Whether the trial court erred in refusing to suppress the massive
    amounts of physical evidence in this case (documents, cell
    phone records, e-mails, computer hard drives, etc.) which
    evidence was obtained by search warrants that were general
    investigatory warrants, overbroad, "overseizing" and violative of
    the speech or debate clauses of the State and Federal
    Constitutions; furthermore, the taint team in place was
    procedurally defective?

D.  Whether the forgery convictions were against the weight of the
    evidence because no rational juror could infer beyond a
    reasonable doubt on the evidence adduced that appellant was
    responsible for forging the subject documents or knowingly
    introducing them at the first trial?

E.  Whether the forgery convictions must be vacated and dismissed
    because there was insufficient evidence for the jury to conclude
    beyond a reasonable doubt that appellant was responsible for
    forging the subject documents or knowingly introducing them at
    the first trial?

F.  Whether the trial court erred in ordering over $110,000 in
    restitution be paid by appellant for legal fees and costs incurred
    by counsel for the Senate Republican caucus when the caucus is
    not an "agency" under the act and counsel almost exclusively
    represented the interests of the caucus itself and not appellant?

G.  Whether appellant's theft sentences are illegal and should have
    merged because there was only one theft based on the
    underlying allegations involving Senator Orie and Justice Orie
    Melvin?

H.  Whether the trial court erred in refusing to recuse the District
    Attorney's office from the instant prosecution because of its
    conflict of interest or personal animus or the appearance thereof?

I.  Whether the trial court erred in granting the prosecution's motion
    to preclude from trial any evidence of or argument about the
    long-standing political feud between the Zappala family and the
    Orie family which was an essential part of the *res gestae* of this
    case?

J.  Whether the Pennsylvania conflict-of-interest statute is
    unconstitutionally vague and overbroad because it violates
    appellant's right of free speech and association protected by the

First Amendment of the United States Constitution and Article I,
Section 7 of the Pennsylvania Constitution?[2]

The judgment of sentence was affirmed on March 6, 2014, <u>Com. v. Orie</u>, 88 A.3d 983 (Pa.Super. 2014).[3]

A petition for allowance of appeal to the Pennsylvania Supreme Court was filed in which the questions presented were:

A.   Whether, in a matter of first impression, the search and seizure of petitioner's Senatorial Offices, which resulted in the removal, inter alia, of all the operational computers, hard drives and software, constituted a general and overbroad search as well [as] an abridgment of the separation of powers doctrine in violation of the State and Federal Constitutions?

B.   Whether, in a matter of first impression, the appointment by the court of a special master to review the myriad of documents seized from petitioner's Senatorial Offices as opposed to permitting petitioner, and Senate representatives to identify and invoke legislative privilege prior to their access by the District Attorney violated her legislative, deliberative process, and other privileges under the State and Federal Constitutions?

C.   Whether, in a matter of first impression, the restitution order in excess of $110,000 be paid by petitioner for legal fees and costs incurred by counsel for the Senate Republican Caucus when the caucus is not an "agency" under 18 Pa.C.S. § 5303(a) and counsel almost exclusively represented the interests of the caucus itself and not petitioner?[4]

On September 17, 2014, leave to appeal was denied.[5]

The instant petition, filed on September 2, 2015 raises the following issues:

1.   The retrial should have been barred on federal double jeopardy grounds because the trial court lacked the "manifest necessity" to declare a mistrial while the jury was deliberating in the first trial (Petition at p.9).

2.   The Pennsylvania conflict-of interest statute is unconstitutionally vague on its face as well as vague and overbroad and impinged on the rights of association between petitioner and her constituents/supporters because it violates petitioner's right of free

---

[2]   Appx. to answer at pp.1675-1676.
[3]   Id. at pp. 1886-1922.
[4]   Id. at p.1936.
[5]   Id. at p.1996.

speech and association protected by the first amendment of the United States Constitution (Petition at p.35).

3. The trial court erred in precluding the testimony of the longtime Senate Chief Counsel Steve MacNett, who would have testified at the second trial as he did at the first trial that the Pennsylvania State Senate Rules permitted political campaign work during the legislative day with the use of compensatory time, directly rebutting Commonwealth's case in chief and testimony from Commonwealth's expert witness Senate Chief Clerk Russ Faber (Petition at pp. 71-72).

4. The record evidence, viewed in the light most favorable to the prosecution, was insufficient and no rational trier of fact could have found beyond a reasonable doubt the essential element of forgery, that petitioner uttered a writing that she knew to be forged. (Petition at p. 88).

5. In a matter of first impression, the search and seizure of all of the petitioner's digital evidence constituted a general and overbroad search as well [as] an abridgment of the separation of powers doctrine in violation of the Federal Constitution[]. (Petition at p. 96).

6. In a matter of first impression, the appointment by the court of a special master to review the myriad of documents seized from petitioner's senatorial offices and legislative staff members as opposed to permitting petitioner and Senate Representatives to identify and invoke legislative privilege prior to access by the District Attorney violated petitioner's legislative, deliberative process, and other privileges within the speech or debate clause and separation of powers under the State and Federal Constitutions. (Petition at p. 158).

7. The trial court erred in refusing to recuse the District Attorney's office from the instant prosecution because of its conflict of interests or personal animus or the appearance thereof (Petition at p. 200).

The respondents concede that these claims have been exhausted in the state courts and that the instant petition is timely.[6]

The background to this prosecution is set forth in the March 6, 2014 Opinion of the Superior Court:

The case at Docket No. 10285-2010 began after a graduate student intern filed a handwritten complaint with the Office of the District Attorney of Allegheny County, alleging that while she worked in the district office of Orie, a Pennsylvania Senator representing the 40th Senatorial District, she had observed staff members engaging in political campaign work. The case proceeded to trial, but ended in a mistrial when, during jury deliberations, altered defense exhibits

---

[6] See: Answer at pp.30, 34.

were discovered, that discovery led to the charges at Docket No. 12098-2011. As the trial court more fully explained:

… [Orie] was originally charged at [Docket No.] 201010285, pursuant to a presentment issued by the A2208 Allegheny County Investigating Grand Jury on April 4, 2010, with three counts of Theft by Diversion of Services (18 Pa.C.S.A. §3926(b)); one count of Criminal Conspiracy – Theft by Diversion of Services (18 Pa.C.S.A. § 903(A)(1)); three counts of Violating the Conflict of Interest Statute (65 Pa.C.S.A.. § 1103(a)); and three counts of Tampering [W]ith [or] Fabricating Physical Evidence (18 Pa.C.S.A. § 4910(1)).

The first trial on those charges ended in a mistrial on March 3, 2001.[1]

> [1] [Orie] was tried together with Janine Orie, her sister, who was charged with similar offenses.

The case was scheduled for retrial. [Orie] filed a motion seeking to bar the retrial on double jeopardy grounds. In an Opinion and Order dated April 5, 2011, the Motion was denied. [Orie] filed a Petition with the Superior Court seeking leave to file an interlocutory appeal from the denial of her Motion seeking to bar the retrial on double jeopardy grounds. The Superior Court denied the Petition on April 13, 2001, on the basis that the appeal was frivolous and [Orie] filed a Petition for Allowance of Appeal from the Superior Court. On June 23, 2011, the Supreme Court vacated the Superior Court order as it pertained to the determination that the appeal was frivolous and remanded the matter to that Court to address the issue.[2]

> 2. [Orie] also appealed [the trial] Court's denial of the request made, with the filing of the Motion to Dismiss, that [the trial] Court recuse. The Supreme Court affirmed the Superior Court's ruling affirming [the trial] Court's denial of the Motion to Recuse.

The Superior Court, in turn, remanded the matter to [the trial] court to prepare a supplemental Opinion on the issue of frivolousness. That Opinion was filed on July 24, 2011 and the matter was retransmitted to the Superior Court. In an Order dated August 31, 2011, the Superior Court affirmed. The Petition for Allowance of Appeal was filed but denied by the Supreme Court on September [27], 2011.

On August 29, 2011, [Orie] was charged, at [Docket No.] 201112098 with sixteen (16) additional criminal offenses. These new offenses arose out of the events that occurred at the first trial that caused the Court to declare a mistrial … In essence, forged documents were offered into evidence by the defense at that trial; documents that were authenticated by [Orie] and admitted into evidence by the Court. It was not until jury deliberations had commenced that the forged nature of the documents was discovered. The investigation into those documents led to the additional charges…[3]

3. The new charged were joined for trial with the original charges. The case of the co-defendant, Janine Orie, was severed from this trial because of the new charges against this defendant, which did not involve Janine Orie.

This matter proceeded to trial before a jury on February 27, 2012. On March 26, 2012, the jury returned verdicts at both cases. At [Docket No.] 201010285, the jury found [Orie] guilty of the Theft by Diversion of Services charges at Counts 1 and 3; the Conspiracy charge at count 4[;] the Conflict of Interest charges at counts 5 and 6; and [] the Tampering With or Fabricating Physical Evidence charges at counts 8 and 9. The jury found [Orie] not guilty of the Theft by Diversion of Services charge at count 2; the Conflict of Interest charge at count 7; and the Tampering [W]ith or Fabricating Physical Evidence charge at count 10.

At [Docket No.] 201112098, the jury found [Orie] guilty of Forgery charges at counts 6 and 7; [five] of the [six] Tampering With or Fabricating Physical Evidence charges, filed at counts 8,9,10,11 and 12; [Orie] was found not guilty of the five (5) Perjury counts … at counts 1 through 5; the Tampering With or Fabricating Physical Evidence charge at Count 13; the Obstruction of Justice charge at count 14; the Perjury charge at count 15; and the election Code Reporting Violation at count 16 …

On June 4, 2012, [Orie] was sentenced at [Docket No.] 201010285, to not less than six (6) nor more than twenty-four (24) months at counts 1,3 and 4, to run consecutive to one another, for an aggregate term of imprisonment at that case of not less than eighteen (18) nor more that seventy-two (72) months. No penalty was imposed on the remaining counts for which a verdict of guilty was returned.

At [Docket No.] 201112098, the Court sentencd [Orie] to not less than four (4) nor more than twelve (12) months at each of the two Forgery counts; to not less than two (2) nor more than twelve months at the Tampering With Physical Evidence charges at counts 8 and 10, and to no further penalty on the remaining counts. Those sentences were likewise ordered to run consecutive to one another and consecutive to the sentences imposed on the other case. The aggregate sentence imposed for both cases was not [less] that thirty (30) nor [more] than one hundred and twenty (120) months incarceration… The Court deferred the ruling on the request for restitution and reimbursement pending a further hearing…

On June 15, 2012, Orie timely filed post-sentence motions which were denied by the court on August 29, 2012. Orie then filed a notice of appeal on September 6, 2012 … The trial judge … filed his Rule 1925(a) opinion, dated December 28, 2012, on January 17, 2013. This opinion supplemented five previous opinions that address issues raised in this appeal… (some footnotes omitted).[7]

---

[7] See: App. pp. 1894 -1895

It is provided in 28 U.S.C. §2254(b) that:

> An application for a writ of habeas corpus in behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted unless it appears
> that the applicant has exhausted the remedies available in the courts of the State,
> or that there is either an absence of available State corrective process or the
> existence of circumstances rendering such process ineffective to protect the rights
> of the prisoner.

We now address the issue raised here.

Double Jeopardy

Orie's first argument here is that her retrial was barred by the Fifth Amendment
prohibition against double jeopardy. Specifically, the record demonstrates that on March
3, 2011 the prosecutor represented to the court that he believed the deliberating jury was
in possession of fraudulent defense exhibits (TT.3/3/11 pp.2-3); that jury deliberations
were halted (Id. at p.3); that these exhibits were never shown to the prosecution prior to
their introduction by the defense (Id. pp. 6-7); that after examination of the documents the
court concluded that they were "doctored" (Id. pp.7, 8, 12, 15); that the prosecutor asked
for at least a limiting instruction (Id. pp.15, 17, 29-30); that defense counsel argued that
rather than a limiting instruction he would urge the court to declare a mistrial (Id. p.18)
although he later opposed the granting of a mistrial (Id. p.33)and that a document expert
was called outside the hearing of the jury and he testified that the signature in questions
resulted from cut and paste or forgery attempts (Id. pp.24-28). The court then stated:

> [T]he Court now has the situation where a jury has gone to deliberate the
> documents that are fraudulent. It is evidence that strikes at the heart of the case. It
> is a fraud on the Court, it is on the jury, and on our justice system.
>
> And frankly, Mr. Costopoulos [defense counsel], that is what is outrageous. It
> calls into suspicion every document that the defense offered. And it is deceitful, it
> is dishonest, it is despicable, and it is a crime. And I don't know who among the
> parties involved for the defense has done this, but I cannot allow this jury to
> continue with fraudulent information in front of them… (Id. p.34).

Although the court heard argument from counsel, it did not disturb its conclusion that "there is
manifest necessity here and a mistrial is going to be granted. (Id. p.37).

It has long been fundamental Constitutional law that when "manifest necessity"
exists, a judge may remove an empaneled jury and order a retrial without violating the
double jeopardy prohibition. United States v.Perez , 22 U.S. (9 Wheat) 579 (1824);

United States v. Rivera, 384 F.3d 49, 55 (3d. Cir. 2004). That is, the intent of the prohibition is to prevent a retrial where actions beyond the defendant's control result in the declaration of a mistrial. Id. at 55. Such is not the case here. Rather the record demonstrates that the forged documents were created by or on behalf of the petitioner, and she cannot demonstrate that any prosecutorial or judicial misconduct caused the grant of a mistrial. Rather, the impropriety is directly attributable to her.

As a result, the court's conclusion that manifest necessity existed is clearly supported by the record, and the retrial did not result in a violation of the probation against double jeopardy and this allegation does not provide a basis for relief.

Vagueness of conflict of interest prohibition.

Petitioner next contends that the Pennsylvania conflict of interest statute, 65 Pa.C.S.. § 1103(a) is unconstitutionally vague under the First Amendment. The Pennsylvania statute provides:

> **(a) Conflict of interest.--**No public official or public employee shall engage in conduct that constitutes a conflict of interest.

The prohibition has been determined not to be unconstitutionally vague. Com. v. Veon, 109 A.3d 754 (Pa.Super. 2015), allowance of appeal granted in part 121 A.3d 954 (Pa. 2015).

Under the First Amendment " the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357 (1983). See: Johnson v. United States, 135 S.Ct. 2551, 2556 (2015).

In the instant case, in the original indictment, Orie was charged in Counts 5, 6 and 7 with violations of 65 Pa.C.S.A. § 1103 (A) " restricted activities -conflict of interest." Specifically, it was charged:

> Count 5: The actor, a public official or public employee engaged in conduct that constituted a conflict of interest, namely in her capacity as Pennsylvania State Senator for the 40th Senatorial District, on diverse dates from January 2001 through and including November, 2009, did use the authority of her office for the private pecuniary benefit of herself, or a member of her immediate family as the same is defined by 65 Pa.C.S. 1102, or for a business with which she or a member of her family is associated, that is for the benefit of herself, the said action having more than a de minimis economic impact or which does not affect to the same degree a class consisting of the general public or a subclass consisting of an

industry, in violation of the Pennsylvania Public Official and Employee Ethics Act, 65 Pa.S. §§ 1103 (a) and 1109(a) of October 15, 1998 as amended.

Count 6: The actor, a public official or public employee engaged in conduct that constituted a conflict of interest, namely in her capacity as Pennsylvania State Senator for the 40th Senatorial District on diverse dates from January, 2002, through and including November, 2006, did use the authority of her office for the private pecuniary benefit of herself, or for a member of her immediate family as the same is defined by 65 Pa. C.S. 1102, or for a business with which she or a member of her family is associated, that is for the benefit of herself the said action having more than a de minimis economic impact or which does not affect to the same degree a class consisting of the general public or a subclass consisting of an industry, in violation of the Pennsylvania Public Official and employee ethics Act, 65 Pa.C.S. §§ 1103(a) and 1109(a) of October 15, 1998, as amended.

Count 7: The actor, a public official or public employee engaged in conduct that constituted a conflict of interest, namely in her capacity as Pennsylvania State Senator for the 40th Senatorial District on diverse dates from January, 2003, through and including November, 2009, did use the authority of her office for the private pecuniary benefit of herself, or for a member of her immediate family as the same is defined by 65 Pa. C.S. 1102, or for a business with which she or a member of her family is associated, that is for the benefit of her sister Joan Orie Melvin, the said action having more than a de minimis economic impact or which does not affect to the same degree a class consisting of the general public or a subclass consisting of an industry, in violation of the Pennsylvania Public Official and employee ethics Act, 65 Pa.C.S. §§ 1103(a) and 1109(a) of October 15, 1998, as amended.(Appx. at pp. 38-39).

The January 22, 2010 affidavit of probable cause in support of a search warrant for petitioner's office sets forth in considerable detail information obtained from volunteers as well as paid personnel in that office demonstrating that while on the legislative payroll they were required to perform campaign work on legislative time on behalf of both Orie and her sister Jane Orie Melvin who was running for a seat on the Pennsylvania Supreme Court. (Appx. pp.346-367). Included in that affidavit is a statement by an individual who "admitted that in her position as Chief of Staff with Orie, she has personally conducted campaign work on behalf of Orie on legislative time since at least 2001" (Appx. at p.354).

In reviewing this claim, the Superior Court citing  Com v. Habey, 934 A.2d 732 (Pa.Super.2007), allowance of appeal denied, 598 Pa. 746 (2008)  rejected the vagueness challenge and observed that 65 Pa. C.S. § 1102 provides the definition of:

"Conflict" or "conflict of interest." Use by a public official or public employee of the authority of his office or employment or any confidential information received

through his holding public office or employment for the private pecuniary benefit of himself, a member of his immediate family or a business with which he or a member of his immediate family is associated. The term does not include an action having de minimis economic impact or which affect to the same degree a class consisting of the general public or a subclass consisting of an industry, occupation or other group which includes the public official or public employee, a member of his immediate family or a business with which he or a member of his immediate family is associated. (Appx. at. pp.1915-1916).

The Court concluded,

We find the statute places no restrictions on a public official's federal or state protected rights of expression and association, but only prohibits officials from using state-funded resources for *non-de minimis* private pecuniary gain… ("the charges are based on allegations that she had those employees engage in activities that were *solely* campaign related, activities that where wholly unrelated to any official duties…")(citing the opinion of the trial court)(internal citation omitted) (Appx. at p.1917).

The federal void for vagueness doctrine prohibited by the Fifth Amendment "establishes that the Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or is so standardless that it invites arbitrary enforcement." Johnson v. United States, 135 S.Ct. 2551, 2556 (2015). Such is not the case here. The Pennsylvania statute clearly sets forth that state officials are prohibited from utilizing their public position to engage in private activities on their personal behalf. For this reason, the statute is not void for vagueness.

Exclusion of testimony of former Senate Chief Counsel.

Orie next contends that the trial court should not have precluded the testimony of retired Senate Chief Counsel Steve MacNett at the second trial when at the first trial he testified that during the time in question Senate rules did not prohibit employees from engaging in political campaign activities during the legislative day when they were utilizing compensatory time. (T1 2555-2556).[8]

However, when at the second trial defense counsel argued for permitting MacNutt to testify, the prosecution represented that they would offer rebuttal testimony that as early as 2004, MacNutt had warned staffers that they were not permitted to perform such work, "so if he testifies, and that is not my problem, he is going to be committing perjury. I will have two

---

[8] Transcript references marked T1 refer to the transcript of testimony presented during the first trial.

witnesses to say that [he had made the pronouncement in 2004]" (T2. 3251-3256).[9] The trial court thereupon excluded both the testimony of MacNutt as well as the two related rebuttal witnesses (T2. 3257).

In her defense, Orie testified that from the time she assumed office in 2001 she did everything she could to assure that the ethics requirements of separating legislative from campaign work were adhered to by her staff (T2. 3440-3441). For this reason, the Commonwealth argues that MacNutt's testimony was irrelevant. Orie on the other hand argues that such testimony would have contradicted the testimony of the Chief Senate Clerk that under no circumstances could staffers perform campaign work in their legislative offices even if they were utilizing compensatory time (T2. 1715-1716). Petitioner argues,

> It has always been Petitioner's defense in the first and second trials – from the opening, on cross-examination, in its case in chief, and closing arguments that the defense acknowledged campaign work being done during the legislative day by legislative staffers and acknowledged some of it was done in the legislative office but stressed that it was lawful for staffers to do so on vacation time, personal, or with accumulated compensatory time.[10]

Even if he had testified, MacNutt could have only supported his interpretation of internal Senate rules regarding the use of comp time and not about any impact those rules had on criminal statutes. As the trial court summarized:

> [MacNutt's] testimony was not relevant. None of the thefts of services or ethics charges involved allegations that staff employees engaged in campaign work while on comp time during normal working hours of their offices. The Commonwealth's evidence established that the defendant's staff members were directed to engage in campaign related activities during the standard working hours while they were being paid to engage in official Senate related business. Defendant offered no evidence establishing that the staff members, whose activities form the basis for the diversion of services and ethics charges, were using accumulated comp time to engage in campaign related activities. (Appx. at 1642).

The Superior Court likewise concluded that as a matter of state law, MacNutt's testimony was irrelevant:

> Contrary to Orie's argument, we find that Orie's defense was **not** that she believed comp time political activity done in the legislative office was lawful. Rather, Orie's defense was that she knew it was illegal for campaign work to be

---

[9]  Transcript references marked T2 refer to the transcript of testimony presented during the second trial.
[10]  See: Petition at p. 76.

conducted in the legislative office…MacNutt's proposed testimony, regarding the absence of any Senate rule that precluded doing campaign work in the legislative office of comp time, was irrelevant… (Appx. at p. 1901).

In addition, the determination of the admissibility of evidence at state trials is controlled by state law. <u>Swarthout v. Cooke</u>, 131 S.Ct. 859, 861 (2011). Alleged state evidentiary errors do not provide a basis for federal relief unless tantamount to a due process violation. <u>Keller v. Larkins</u>, 251 F.3d 408 (3d Cir.) cert. denied 534 U.S. 973 (2001). No such showing is made here, rather the record clearly supports the conclusion that the proposed testimony was irrelevant.

<u>Insufficiency of the evidence.</u>

Petitioner's next argument is that the evidence was insufficient to support a guilt finding beyond a reasonable doubt. Specifically, petitioner contends that:

As a result of Petitioner's introduction into evidence at her first trial of two forged documents, Exhibits 101-B and 110, Petitioner was charged a second time pursuant to 18 Pa.C.S. §4101(a)(3) [with forgery]…

The only element at issue for the forgery convictions is knowledge that the documents were forged. In order to be found guilty of forgery under Section 4101(a)(3), the Commonwealth must prove that Petitioner intended to defraud or injure someone, or acted with the knowledge that she was facilitation such a fraud or injury.[11]

The federal standard for a challenge to the sufficiency of the evidence is whether based on the evidence presented any rational fact finder could determine guilt beyond a reasonable doubt. <u>Coleman v. Johnson</u>, 132 S.Ct. 2060 (2012).

Section 4101(a) provides:

A person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor:

(1) alters any writing of another without his authority;
(2) makes, completes, executes, authenticates, issues or transfer any writing so that it purports to be the act of another who did not authorize that act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed; or
(3) utters any writing which he knows to be forged in a manner specified in paragraphs (1) or (2) of this subsection.

---

[11] See: Petition at ¶¶ 180 -181.

While the Commonwealth does not allege that petitioner herself committed the forgery, the prosecution was based on the fact that during the first trial petitioner's counsel introduced exhibits 101-A and 101-B which allegedly had directives from the petitioner to her staff not to perform political activity on legislative time.[12]

At the second trial, the court read the following stipulation to the jury:

A stipulation has been entered between the Commonwealth and the defense in this case as follows: The jury shall consider as a binding matter of fact in this case that each and every one of those exhibits that were admitted into evidence by and on behalf of the defense during a prior proceeding in this court …were then and now are in the same form and appearance as they were when each and every exhibit was delivered by Jane Clare Orie or by members of Orie's senatorial staff who were working on behalf of Senator Jane Clare Orie, to her attorney for presentation to the trial court. And no alterations were made and no changes were done on or to any of the said exhibits by either the attorney for Jane Clare Orie, by any of the staff of that attorney's office or by the district attorney's office or its staff.

It is also stipulated that each and every document that was scanned into the computers of the Pennsylvania Senate at the direction of Jane Clare Orie and which were presented to her attorney for use in Orie's defense by Jane Clare Orie or members of her staff who were acting at Orie's direction whether or not actually used in the case as exhibits were then, as they are now … in the same form and appearance as they were in [when] each and every document was delivered to her attorney by Jane Clare Orie or by members of her staff who were acting on behalf of Jane Clare Orie. No alterations were made and no changes were done on or to those said documents by either the attorney for Jane Clare Orie or by any staff of that attorney's office or by the district attorney's office or its staff.

It is further stipulated that Jane Clare Orie represented to her attorney that any and all written and printed notations that appear as additions to those documents were done by Jane Clare Orie contemporaneously either with the dates that appear on those exhibits or if not specifically dated within the time periods that are reflected by the respective documents or exhibits (T2. 118-119).

As the prosecution summarizes, these documents were introduced to demonstrate the Orie had arduously worked to inform her staff that political work could not be accomplished on legislative time by introducing documents alleged signed by staff members acknowledging being so instructed. However, at the second trial, those same staff members denied having signed the

---

[12] See: Answer at p.65.

notices introduced by Orie (T.2 364-365, 490-598; 966; 1201; 1317; 1424-1425; 1542-1543; 1624-1626; 1682-1684; 192101925; 1939-1942; 1946-1954; 1957-1963, 1969-1970, 2015, 2247-2257, 2862).

Thus, the issue became one of credibility, an issue left to resolution by the fact finder. United States v. John-Baptiste, 747 F.3d 186, 208 (3d Cir.), cert. denied 134 S.Ct. 2324 (2014). Certainly there was sufficient evidence, if credited by the jury upon which to establish guilt. As such this claim likewise does not provide a basis for relief.

Seizure of digital evidence.

Orie next alleges that the seizure of her digital evidence was pursuant to overbroad warrants. Specifically, she contends "in a matter of first impression, the search and seizure of all of the petitioner's digital evidence constituted a general and overbroad search as well as abridgment of the separation of powers doctrine in violation of the federal constitution." (Issue E commencing on p.96).

Specifically, petitioner alleges in paragraphs 198 and 199 of her petition,

> The Commonwealth applied for, was granted, and executed twenty-three (23) sealed search warrants … on former Senator Orie's offices, staffers, computers, cell phones, laptops, email accounts, and USB flash drive, seizing their contents prior to the first trial. These search warrants essentially allowed the District Attorney to go on a fishing expedition of items and information, most of which was constitutionally protected, privileged, private, personal or legitimate non-legislative and irrelevant… after the District Attorney was informed by defense counsel on December 9, 2009 that the intended search process of both attorney-client and legislatively privileged documents (i.e., the prosecutorial taint team) was unconstitutional, the District Attorney, while no exigent circumstances ever existed, issued multiple sealed remediated subsequent warrants with a different search process (i.e. the Special Master) in an attempt to cure the initial illegal searches and seizures *after the fact*. The court-appointed Special Master was indeed at odds with the terms of the original sealed search warrants, and the Petitioner was never afforded the opportunity at the time the warrants were executed to enforce her constitutional rights… This process utilized by the District Attorney of attempting to cure the initial illegal warrant authorizing both the search and seizure of electronic data by issuing a subsequent search warrant to remedy only the illegal search process is unprecedented, inadequate, and unconstitutional (emphasis in original).[13]

In Stone v. Powell, 428 U.S. 465, 493(1976), the Court held "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner

---

[13] Two additional warrants were neither served nor sealed.

may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." (footnotes omitted).

Following review of suppression motions by the trial court, the Superior Court wrote:

Orie first contends the search warrants issued in this case were general and overbroad. Article I, Section 8 of the Pennsylvania Constitution provides, in pertinent part: "[N]o warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause...." Pa. Const. Art. I § 8. This Court has explained:

It is a fundamental rule of law that a warrant must name or describe with particularity the property to be seized and the person or place to be searched.... The particularity requirement prohibits a warrant that is not particular enough and a warrant that is overbroad. These are two separate, though related, issues. A warrant unconstitutional for its lack of particularity authorizes a search in terms so ambiguous as to allow the executing officers to pick and choose among an individual's possessions to find which items to seize. This will result in the general "rummaging" banned by the [F]ourth [A]mendment. A warrant unconstitutional for its overbreadth authorizes in clear or specific terms the seizure of an entire set of items, or documents, many of which will prove unrelated to the crime under investigation ... An overbroad warrant is unconstitutional because it authorizes a general search and seizure.

The language of the Pennsylvania Constitution requires that a warrant describe the items to be seized "as nearly as may be...." The clear meaning of the language is that a warrant must describe the items as specifically as is reasonably possible. This requirement is more stringent than that of the Fourth Amendment, which merely requires particularity in the description. The Pennsylvania Constitution further requires the description to be as particular as is reasonably possible.... Consequently, in any assessment of the validity of the description contained in a warrant, a court must initially determine for what items probable cause existed. The sufficiency of the description must then be measured against those items for which there was probable cause. Any unreasonable discrepancy between the items for which there was probable cause and the description in the warrant requires suppression. An unreasonable discrepancy reveals that the description was not as specific as was reasonably possible. Commonwealth v. Rivera, 816 A.2d 282, 290–291 (Pa.Super.2003) (citations omitted), appeal denied, 573 Pa. 715, 828 A.2d 350 (2003). Because the particularity requirement in Article I, Section 8 is more stringent than in the Fourth Amendment, if the warrant is satisfactory under the Pennsylvania Constitution it will also be satisfactory under the federal Constitution.

Furthermore, the Pennsylvania Supreme Court has instructed that search warrants should "be read in a common sense fashion and should not be invalidated by hypertechnical interpretations. This may mean, for instance, that when an exact description of a particular item is not possible, a generic description will suffice."

*Commonwealth v. Rega*, 593 Pa. 659, 933 A.2d 997, 1012 (2007) (citation omitted), *cert. denied,* 552 U.S. 1316, 128 S.Ct. 1879, 170 L.Ed.2d 755 (2008).

Orie focuses her challenge on the search warrants related to a flash drive provided by Orie to employee, Joshua Dott; Orie's district office; an Acer laptop computer provided by Orie to Dott; Orie's personal email account, and the order for Orie's cell phone records. *See* Orie's Brief at 48–49. Specifically, these warrants are the November 25, 2009, warrant (flash drive), the December 11, 2009 warrant (Orie's district office), the January 5, 2010 warrant (Acer laptop computer), the January 8, 2010 warrant (AOL account Janeorie@aol.com), and the March 1, 2010 order for records of Orie's personal cellular phone. Our review leads us to conclude that suppression of the evidence was not warranted on the basis of Article I, Section 8 of the Pennsylvania Constitution. For purposes of this discussion, we will address not only each of the challenged warrants, but also related warrants that followed the search warrants at issue herein. In addition, it should be pointed out, preliminarily, that on December 29, 2009, a Special Master  was appointed by the Honorable John A. Zottola, the Supervising Judge of the Grand Jury, to review the seized material for any privilege so that the Commonwealth had access only to non-privileged documents. We proceed, then, to an examination of the warrants and accompanying affidavits.

***November 25, 2009 Search Warrant***
The November 25, 2009 warrant for the flash drive, in the possession of Joshua Dott, an employee of Orie, identified the item to be searched and seized as Dott's "PNY USB 2GB flash drive, black in color AND any contents contained therein, including all documents, images, recordings, spreadsheets or any other data stored in digital format." The accompanying affidavit related the details of the affiant's investigation following Orie's intern's resignation and complaint to the Allegheny County District Attorney's Office on October 30, 2009, including information received from the intern, and details of the affiant's interviews with another student staffer, and Dott. The affiant related that on Sunday, November 1, 2009, detectives witnessed Orie's Chief of Staff, Jamie Pavlot, and Dott carry a cardboard box and a postal bin out of the building housing Orie's district office, and load them into Pavlot's vehicle. Dott told the affiant he had observed staff members engage in political campaigning for Pennsylvania Supreme Court Justice candidate, Joan Orie Melvin, in Orie's office in 2009, and had participated in these activities himself. He indicated that he had "scann[ed] or cop[ied campaign contribution] checks and enter[ed] the check information on a spreadsheet to a USB flash drive (black PNY 2gb with 'Polaroid' in white letters) provided by [Orie]." Dott told the affiant the day after the intern resigned, he was notified that his "comp time" would be debited for campaign activities he had performed on behalf of Orie Melvin. He also stated the Sunday after the intern resigned, Pavlot called him to come to the office to help with a rebuttal letter Orie wanted to send to the intern, and he was also asked to assist Pavlot in carrying out boxes of unknown contents, and placing them in Pavlot's vehicle. He told the affiant he was still in possession of the flash drive he used to document the list of

Joan Orie Melvin donors at the direction of Orie and Orie's Chief of Staff, Jamie Pavlot, and the records in the donor list were still maintained within the USB flash drive.

### December 11, 2009 Search Warrant

The December 11, 2009 search warrant for Orie's district office identified the items to be seized and searched as "all computer hardware"; "software"; "documentation" to access the computer systems and passwords; and electronically stored data referencing: Joan Orie Melvin or her 2009 political campaign, and checks, campaign contributions, thank you letters, and masthead for Joan Orie Melvin's 2009 political campaign, and Orie's 2001–2009 elections or political campaigns, and checks, campaign contributions, thank you letters, and masthead for Orie's 2001 through present political campaigns. The accompanying 13–page affidavit of probable cause detailed the results of the Commonwealth's investigation and described interviews with numerous employees of Orie, including Dott, Audrey Rasmussen, and Pavlot, who each described political campaign-related activities conducted in the office. Pavlot stated she had done campaign work on legislative time for Orie since 2001, as well as campaign work for Orie's sister, Joan Orie Melvin, in 2009, and she described those duties. Pavlot and other staffers indicated that legislative computers and other office equipment were used for campaign-related purposes.

### January 5, 2010 Search Warrant

The January 5, 2010 search warrant identified the item to be searched and seized as "Acer Aspire Model 6930 laptop computer and the hard drive contents contained therein" in the possession of "Joshua Dott." The supporting affidavit recounted the facts of the continuing investigation, including an interview with Dott, who stated he was instructed to use an Acer Aspire Model 6930 laptop computer or a black PNY 2gb USB flash drive to enter information into a spreadsheet concerning campaign contribution checks for Joan Orie Melvin, and that both items were provided to him by Orie "for that specific purpose." Dott indicated the political and campaign-related activities were often conducted during business hours. Dott further indicated to the affiant that he was made aware prior to his employment at Orie's office, that another staffer, Audrey Rasmussen had entered similar data on the same laptop computer for Orie's previous political campaigns. Dott stated that since coming into his possession the item "had only been used under the direction of Senator Orie for campaign-related functions."

### January 8, 2010 Search Warrant

The January 8, 2010 warrant for Orie's AOL account Janeorie@aol. com sought, *inter alia,* "all stored communications and other files ... between August 1, 2009 and the present," and was directed to the custodian of records at AOL. The attached affidavit of probable cause indicated that Orie's staffers had stated the email account had been used by Orie to send messages concerning campaign-related activities that they were to perform. In this regard, the affidavit

specifically referenced an email thread initiated on October 29, 2009, from Orie's personal email to Dott and others. The affidavit also included Rasmussen's statements regarding receiving campaign-related emails from Orie's personal email, which were forwarded emails with the term "FR" to indicate the forwarded contact information should be added by Rasmussen to the data base. Rasmussen stated that the "FR" in these emails referred to Fund Raiser.

### January 22, 2010 Search Warrant
The November 25, 2009 search warrant for the flash drive was followed by a January 22, 2010, search warrant for the flash drive, which sought databases and/or spreadsheets containing donation/contribution lists for Orie and Joan Orie Melvin, letterhead and/or masthead, thank you letters, and host committee lists. The accompanying affidavit set forth additional information, including information from the affiant's interview with Pavlot, who described campaign work she and others performed in the legislative office for Orie from 2001, and for Joan Orie Melvin in 2009. Further, the affidavit contained further information Dott had provided to the affiant on January 19, 2010, concerning the types of files that would be present on the flash drive, specifically: "Donations to Judge Joan Orie Melvin (with corresponding check numbers)[;] Donation lists for Senator Jane Orie[;] Donation list for Judge Joan Orie Melvin[;] Host Committee lists[;] Judge Joan Orie Melvin's letterhead [;] Judge Joan Orie Melvin['s] handout layout[;] various thank you notes [; and] Senator Jane Orie's campaign letterhead[.]"

### August 9, 2010 Search Warrant
The December 11, 2009 warrant for Orie's district office was followed by an August 9, 2010 search warrant for the computer hard drives, which identified the items to be searched and seized as:
1. [A]ny Microsoft Outlook calendar data[;]
2. Microsoft Excel spreadsheets associated with the documentation of compensatory time accrual and usage by Orie staff members and which are believed to contain or illustrate evidence of political or campaign-related activities which occurred within the offices of Senator Jane Orie[;]
3. [A]ny documents containing the keywords or phrases from the attached list. The affidavit in support of the warrant averred the details of the ongoing investigation, including campaign-related documents and files revealed by the search of the redacted information from the flash drive and compact disc, and listed 54 words or phrases that had been found within those documents, and believed to be on the hard drives.

### August 19, 2010 Search Warrant
The January 5, 2010 warrant for the laptop computer, was followed by an August 19, 2010 search warrant for the contents of the laptop computer, which identified the items to be searched for and seized as computer files, documents, or spreadsheets containing certain listed verbiage. The accompanying affidavit stated that Dott had detailed his use of the laptop computer to enter campaign-related

check information on a spreadsheet, and related that he was made aware prior to his employment at Orie's office that another staffer had entered similar data on the same laptop computer for previous campaigns. The affidavit set forth a list of words or phrases compiled from campaign-related documents and files revealed by the search of the flash drive.

### March 10, 2010 Search Warrant

The January 8, 2010 warrant for Orie's AOL account Janeorie@aol.com, was followed by a March 10, 2010 search warrant, which identified the items to be searched and seized within the email account as "email content regarding: illegal political campaigning and/or fundraising by Jane Orie, Joan Orie Melvin and/or staff or supporters, information regarding the ongoing criminal investigation, any attempts to thwart or circumvent [the] investigation," and emails referencing a specified term. The affidavit provided the same details as the affidavit accompanying the search warrant for the email account, with further elaboration of the ongoing investigation.

Significantly, the officers testifying at the suppression hearing explained that after the initial search warrants were executed, the items taken pursuant to those search warrants were held without being viewed until law enforcement officials obtained separate search warrants for the data contained within those items. After the search warrant for the flash drive was executed, the flash drive was signed into evidence, and the data on the flash drive was not viewed until after a second warrant and review by the Special Master. *See* N.T., 12/13/2010, at 69–71, 74. *See also id.* at 87–88, 118. Upon execution of the search warrant at Orie's office, the computer hard drives were taken only after copies were made to replace the originals, and the hard drives were placed in custody with the county detective's office until a subsequent warrant was issued and the information was provided first to the Special Master. *Id.* at 34, 36, 38, 267–272. The server in Orie's office could not be copied absent a password that was not provided, so it was seized and taken to the state police barracks and was not viewed initially. *Id.* at 20, 38, 40. Likewise, the data contained within the laptop computer was not accessed until a later warrant was obtained. *Id.* at 118. The same procedure was followed with respect to the email account. *Id.* at 162–164, 168–169. Furthermore, as already mentioned, before being viewed, all material was turned over to a Special Master to cull out any privileged material. *Id.* at 77–78.

In reviewing the challenged warrants—the November 25, 2009 search warrant for the flash drive, the December 11, 2009 search warrant for Orie's district office, the January 5, 2010 search warrant for the Acer laptop computer, and the January 8, 2010 search warrant for the AOL account—we are satisfied that the December 11, 2009 warrant for Orie's district office is valid under Article I, Section 8, of the Pennsylvania Constitution. Likewise, we conclude the January 5, 2010 warrant for the Acer laptop computer is neither general nor overbroad, and is valid under the Pennsylvania Constitution.

On the other hand, we find the November 25, 2009 warrant for the USB flash drive, while supported by probable cause to believe the flash drive contained evidence of criminal activity, was overbroad, in that the warrant sought "any contents contained therein, including all documents, images, recordings, spreadsheets or any other data stored in digital format" without limitation to account for any non-criminal use of the flash drive. Here, the attached affidavit simply recited Dott's current use of the flash drive for Orie Melvin's campaign-related donor lists, without more. However, this case involves **unique facts** that must be considered in our analysis. Given the distinctive nature of a USB flash drive, like other types of digital storage systems (*e.g.,* a computer hard drive), it must be *seized* in its entirety first and then *searched* at a later time (typically by someone with an expertise in this area). Moreover, in this case a search of the contents of the USB drive was **never** conducted pursuant to November 25, 2009 warrant, but rather only in accordance with the second, more detailed January 22, 2010 warrant that provided the particularity that the earlier warrant lacked. Law enforcement seized the flash drive pursuant to the first warrant and searched its contents pursuant to the second warrant. As a result, under the unique facts of this case, we find no constitutional violation. *See generally, Commonwealth v. Johnson,* 68 A.3d 930 (Pa.Super.2013) (police lawfully secured premises pending a search warrant). Furthermore, the information obtained pursuant to the second warrant was delivered to the Special Master for review. Therefore, we conclude no relief is due with respect to Orie's challenge to the flash drive warrants.

Likewise, we find the January 8, 2010 warrant for Orie's AOL account Janeorie@aol.com, seeking, *inter alia,* "all stored communications and other files ... between August 1, 2009 and the present, including all documents, images, recordings spreadsheets or any other data stored in digital format," was overbroad. The affidavit attached to the January 8, 2010 search warrant provided probable cause that evidence of criminal activity could be found therein, and was limited to the period from August 2009 to January 10, 2010, but did not justify the search of all communications for that period. However, as with the warrants for the USB flash drive, law enforcement did not conduct a search pursuant to the January 8, 2010 warrant, but rather only seized the entirety of the evidence for a later search of the contents. The search of the seized information in the AOL account was conducted pursuant to the second, more detailed, March 10, 2010 warrant that provided the particularity that the earlier warrant lacked. Given these unique facts, we similarly find no violation of Orie's constitutional rights. We again note that the evidence obtained through the search conducted pursuant to the second warrant was reviewed by the Special Master before any information was turned over to the prosecutors for review.

Orie, in claiming that these search warrants were defective, relies heavily on *United States v. Wecht,* 619 F.Supp.2d 213 (W.D.Pa.2009). According to Orie, the warrants in this case are nearly identical to those declared general and overbroad in *Wecht,* a case involving a prosecution against the county coroner for, *inter alia,* using public resources to conduct a private pathology business on the side. The

federal district court found overbroad a warrant authorizing the seizure of a laptop computer in the hands of a third party because it permitted the seizure of the laptop and "all information and data contained therein, including data stored on any associated data storage devices such as zip drives, discs (of any kind including cd and hard), and back-up tapes." *Id.* at 240. The district court ruled that this description was problematic "not so much for its ambiguity as for its breadth," and was overbroad because it allowed the seizure of every file on the laptop without any limitation to those files for which the supporting affidavit established probable cause. *Id.* at 243–44. The district court rejected the government's contention that the affidavit established that probable cause was coextensive with all of the laptop's contents, noting that "the affidavit did not provide sufficient information to justify a reasonable inference that *all* of the data on the laptop computer would likely be probative of the crimes under investigation." *Id.* at 244 (emphasis in original).

This Court is not bound by the federal district court's decision in *Wecht,* and furthermore we find that it is clearly distinguishable from the case presently before us. In *Wecht,* the government not only seized the laptop computer itself but also searched its contents *pursuant to the same overbroad warrant.* As explained above, in this case although some digital evidence was *seized* pursuant upon overbroad warrants (*i.e.,* the November 25, 2009 warrant for a USB flash drive and the January 8, 2010 warrant for Orie's personal AOL account), the contents of this seized evidence was not *searched* until after the issuance of subsequent warrants that described with particularity the specific files that could be searched and seized (for which probable cause unquestionably existed). The *Wecht* case involved no subsequent clarifying warrants, and thus Orie's reliance on that case is unavailing.

In sum, having reviewed and considered the initial warrants with incorporated affidavits, the second warrants and accompanying affidavits, the record of the suppression hearing, and the use of the Special Master, we discern no justifiable reason to reverse the court's trial decision that rejected Orie's argument that under Article I, Section 8 of the Pennsylvania Constitution the warrants were invalid.

Finally, we address the March 1, 2010, application and order for disclosure of Orie's cell phone records from July 1, 2009 to December 31, 2009, which is governed by Section 5743 of the Crimes Code, which provides, in pertinent part: *Requirements for court order.*—A court order for disclosure under subsection (b) or (c) shall be issued only if the investigative or law enforcement officer shows that there are specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation. 18 Pa.C.S. § 5743(d).

The affidavit attached to the application for disclosure reiterated the facts set out in the previous affidavits accompanying the warrant applications. Specifically, the

affidavit stated that Pavlot had received campaign-related text messages from Orie's cellular phone, and text messages with directives regarding staffers' future actions following the intern's allegations. Our review confirms that the application and affidavit of probable cause warranted a reasonable belief that the records would be relevant and material to the ongoing criminal investigation. Therefore, we agree with the trial court that the application was properly granted. *See* Trial Court Opinion, 2/4/2011, at 15–16, 28–29 (Findings of Fact, No. 25; Conclusions of Law, Nos. 17–18).

In conclusion, Orie's challenge to the search warrants and order for cellular phone records fails to warrant relief. (footnotes omitted).

88 A.3d at1007-1010, Answer at pp.1902-1906.

The Court in <u>Marshall v. Hendricks</u>, 307 F.3d 36, 82 (3d Cir. 2002) cert. denied 538 U.S. 911 (2003) observed that:

We have recognized that there may be instances in which a full and fair opportunity to litigate was denied to a habeas petitioner… This is not a case where a structural defect in the system itself prevented [petitioner's] claim from being heard… [However] an erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the bar…(internal citations omitted).

According, we conclude that the petitioner's Fourth Amendment claims do not provide a basis for relief under the <u>Stone</u> standard.

<u>Appointment of a special master to review the seized materials.</u>

[Legislators] shall … be privileged … for any Speech or Debate in either House… U.S. Const. Art I, §.6. cl.1. This privilege is mirrored in the Pennsylvania Constitution . Pa.Const. Art.2, ¶15.

Specifically, in raising this issue petitioner alleges that following the seizures "rather than allow petitioner and/or other Senate representatives to review these documents beforehand and invoke legislative privilege where justified, the District Attorney's Office had the court appoint a special master to conduct the review without their participation or knowledge …" in breach of legislative privilege. [14] Petitioner acknowledges that "political activities" are not protected by the Speech and Debate

---

[14] See: Petition at ¶ 324, pp. 159-160.

Clause, but only it's deliberative and communicative legislative documents that are protected.[15]

In <u>In re search of Electronic Communications</u>, 802 F.3d 516, 527-529 (3d Cir. 2015) the Court wrote:

> The Speech or Debate Clause encompasses three main protections, it: (1) bars civil and criminal liability for "legislative acts"; (2) guarantees that a Member, or his alter ego, may not be made to answer questions about his legislative acts;" and (3) bars the use of legislative-act evidence against a Member …

> It cannot, be, however, that the privilege prohibits disclosure of evidentiary records to the Government during the course of an investigation…

> This makes good sense. If it were any other way, investigations into corrupt Members could easily be avoided by mere assertion of this privilege. Members could, in effect, shield themselves fully from criminal investigations by simply citing to the Speech or Debate Clause. We do not believe the Speech or Debate Clause was meant to effectuate such deception.  Rather, the "purpose of the Speech or Debate Clause is to protect the individual legislator, not simply for his own sake, but to preserve the independence and thereby the integrity of the legislative process." That is, the Clause was meant to free "the legislator from the executive and judicial oversight that realistically threatens to control his conduct as a legislator." The crux of the Clause is to "prevent intimidation by the executive and accountability [for legislative acts] before a possibly hostile judiciary." *It is clear that the purpose, however, has never been to shelter a Member from potential criminal responsibility."* (footnotes omitted)(emphasis added).

In response to the suppression motion, the trial court wrote on February 3, 2011:

On December 29, 2009 the  Acting Supervising Judge of the Allegheny County Investigative Grand Jury issued an order appointing a special master to review all materials seized by the District Attorney's Office to determine what material would be subject to the legislative privilege and, therefore, unavailable to the prosecution. The Order set in place procedures to be used to provide to the master viewable copies of the information located on any computer or portable storage device so that he could identify and remove from that device those items subject to legislative privilege. Detective Graber described how those procedures were implemented:

> The master was appointed by Judge Zottola. His role in analyzing or reviewing this material was that the raw data and evidence that had been seized by our office was either delivered under seal directly by us or, if need be, through Trooper Scott Lucas of the

---

[15] Id. at ¶ 383, p.189.

Pennsylvania state police who had also been designated by Judge Zottola and authorized to be part of this process. In the terms of data that might not have gone through the trooper, in terms of perhaps boxes of paper documents, like the ones that were seen being taken out of the office in early November, they were delivered directly by us to the special master. The special master reviewed them and did what he had to do, contacted us, and I went to his office and obtained sealed boxes that he directed me according to, I assume, either his reading of those directions or on his own as a result of those directions and then we were able to either look at a portion of the contents or we were directed to in terms of computer information sometimes to deliver it under seal to Trooper Lucas who would redact whatever had been instructed by either the special master or Judge Zottola, and Trooper Lucas would then provide us with a redacted viewable version of those drives in terms of computer information. (footnotes omitted).[16]

The special master appointed by the Court was Duquesne University Law Professor Bruce Antkowiak.[17]

In Eastland v. Unites States Servicemen's Fund, 421 U.S. 491, 502-503 (1975), the Court wrote:

> The purpose of the [Speech or Debate] Clause is to insure that the legislative function the Constitution allocates to Congress may be performed independently…
>
> In determining whether particular activities other than literal speech or debate fall within the "legitimate legislative sphere: we look to see whether the activities took place "in a session of the House by one of its members in relation to the business before it." (citations omitted).

In his concurring opinion, Justice Marshall wrote, "the Speech or Debate Clause does not insulate legislative functionaries carrying out nonlegislative tasks…" 421 U.S. at 516-517

This issue was raised in the Superior Court which wrote:

> [A] special Master was appointed to screen for any documents that were subject to legislative privilege. At the suppression hearing, retired Commonwealth President Judge Joseph T. Doyle testified as an expert for Orie…

---

[16] See: Exhibit 23 to the answer at pp. 675-676.
[17] Id. at p.676. We observe that Mr. Antkowiak also served as a federal prosecutor for a number of years.

> At the pre-trial conference held on January 27, 2011, the
> Commonwealth agreed that it would only introduce into evidence
> the documents that both the Special Master and Judge Doyle had
> determined were non-legislative… In addition, the court indicated
> it would allow Orie to assert the privilege at trial should a dispute
> arise as to a certain document, and no such document was ever
> identified at trial…

88 A.3d at 1012.

Clearly, the Court made every conceivable effort to assure that petitioner's speech or debate protections were observed by appointing a special master as well as relying on Orie's expert witness to assure that those rights were protected. In addition, although no further objection was raised, the petitioner was granted leave to raise any further objections during trial. Thus, the determination of the state courts were not contrary to any decisions of the United States Supreme Court nor involved any improper application of those decisions, and this claim does not provide a basis for relief.

<u>Refusal to disqualify the District Attorney of Allegheny County.</u>

Petitioner contends that "from the very beginning of the District Attorney's investigation of Petitioner and her family, the defense at all times believed and therefore averred that the prosecution was instigated and pursued with a conflict of interest."[18] Specifically, she contends that a prejudicial prosecution occurred because she opposed interests involving the District Attorney's family. In an unpublished opinion, <u>United States v. Zagami,</u> 374 Fed.Appx. 295, 297 (2010)(citations omitted) the Court adopted the language of the district court that "the disqualification of Government counsel is a 'drastic measure and a court should hesitate to impose it except where necessary.' " See also, <u>United States v. Zamichieli,</u> 2015 W.L. 3668147 (E.D.Pa. 2015). Based upon unsupported contentions, the petitioner concludes that "the defense established a conflict of interest and/or personal animus, or the appearance thereof, on the part of the District Attorney's Office …"[19]

As presented to the Superior Court, this issue was raised as a violation of the conflict of issue statute, 65 Pa.C.S. § 1103 which she alleged was overbroad and as a result conflicted with the Fifth Amendment. 88 A.3d at 1023 (App.1915). In the context to a challenge to a state statute, the Superior Court concluded that the statute was not unconstitutionally vague. Id. at

---

[18] See: Petition at pp.200-201.

[19] Id at p. 207.

1026 (App. 1917).[20] Since federal courts do not determine state law, this finding is conclusive here. Swarthout v. Cooke, 131 S.Ct. 859 (2011).

In addition, in reviewing this allegation the trial court wrote in its December 28, 2012 opinion:

> The first claim is that the Court erred in barring the defense from introducing evidence of an alleged political feud between the family of the District Attorney of Allegheny County, Stephen A. Zappala, Jr., and the family of the defendant … The defendant offered little in the way of evidence to support this claim. Her former attorney testified about two newspaper articles. The first, from the October 25, 2009 Pittsburgh Post-Gazette, stated that the District Attorney's father, retired Pennsylvania Supreme Court Chief Justice Stephen A. Zapalla, Sr., held a position with an organization that supported casino development, the Casino Association. The other, from the January 24, 2012 Allentown Morning Call, reported that Senator Orie was raising questions about the propriety of Chief Justice Zappala's activities on behalf of the Casino Association…
>
> From that flimsy foundation, the defendant tried to build a case that this prosecution was somehow in retaliation for the defendant's position [against] casino gambling. She failed to do so. There was simply nothing in the record to suggest that the motivation for the institution of the investigation was anything other than the District Attorney carrying out the obligations of his office to investigate criminal activity brought to his attention. It must be remembered that this investigation began only after a graduate student interning in the Senator's office, with no apparent connection to the District Attorney reported what she perceived to be illegal conduct by the Senator and her staff; a perception that the jury in the second trial found to be wholly accurate. From that point, the District Attorney had an obligation to investigate and, if criminal conduct were discovered, to prosecute. The claim that the charges were a result of a political feud was a red herring raised by the defense that had no basis in fact. (App. 1639-1640)(record references omitted).

Since state factual determination are entitled to a presumption of correctness and there is nothing here to rebut that presumption, this issue is likewise without merit here. 28 U.S.C. § 2254 (e)(1); Burt v. Titlow, 134 S.Ct. 10 (2013).

---

[20] Relying on the trial court's finding that Orie was not charged with violating § 1103 but rather using her state legislative staff employees solely for campaign related purposes. 88 A.3d at 1426 (App. 1917).

Because none of the issues raised here demonstrate that petitioner's conviction was in any way contrary to or involved an unreasonable application of federal law as determined by the Supreme Court, she is not entitled to relief .

For this reason, the petition of Jane C. Orie for a writ of habeas corpus will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

An appropriate Order will be entered.


Filed:   March 17, 2016                                      s/ Robert C. Mitchell
                                                             United States Magistrate Judge